UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

Case No. 3:22-cv-09586-MCR-HTC

KAREN E. HENDERSON,

       Plaintiff,

v.

WELLS FARGO CLEARING SERVICES,
LLC. F/K/A WELLS FARGO ADVISORS,
LLC. F/K/A WACHOVIA SECURITIES,
LLC.,

       Defendant.
_____/

**DEFENDANT WELLS FARGO CLEARING SERVICES, LLC'S MOTION
TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED
MEMORANDUM OF LAW**

Defendant Wells Fargo Clearing Services, LLC ("WFCS"), by and through undersigned counsel, under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, respectfully requests the Court dismiss the Complaint in its entirety with prejudice for failure to state a claim against WFCS upon which relief can be granted, and to dismiss the Complaint because all of the causes of action asserted in the Complaint are long barred by the applicable statutes of limitations. Should the Court decline to do so, the Complaint should still be dismissed for failure to meet the heightened pleading standard under Rule 9(b) for claims sounding in fraud. Pursuant to Local Rule 7.1(K), WFCS also requests a hearing as set forth below.

## I. __INTRODUCTION__

The Complaint seeks to hold WFCS responsible for a series of personal loans Plaintiff made to her physician Marcene Faye Kreifels-Hayman ("Dr. Kreifels-Hayman") and her spouse beginning over _fourteen years ago_. Even the "most recent" of the alleged loans was made over _nine years ago_.[1]

---

[1] While Plaintiff vaguely alleges that the funds came from her WFCS brokerage account, the only evidence of such loans attached to the Complaint are checks drawn on Plaintiff's account at an entirely different financial institution – the Eglin Federal Credit Union – and no allegations explaining the apparent inconsistency. _Hoefling v. City of Miami_, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss."); _Crenshaw v. Lister_, 556 F.3d 1283, 1292 (11th Cir. 2009) ("It is the law in this Circuit that when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

According to the Complaint, the only connection between WFCS and Plaintiff's loans to  Dr. Kreifels-Hayman, is that Dr. Kreifels-Hayman's brother was Plaintiff's WFCS financial advisor.  Indeed, the causes of action asserted against WFCS in the Complaint rest primarily on vague and conclusory allegations that an undisclosed "conflict of interest" existed apparently based solely on their familial relationship.  However, the admissions made in the Complaint directly contradict these vague allegations.  For example, Plaintiff concedes that she had already developed a relationship with Dr. Kreifels-Hayman, and began extending these personal loans, <u>prior</u> to ever becoming a WFCS customer. Moreover, Plaintiff concedes that, prior to opening her WFCS accounts relationship, she knew that her prospective financial advisor was Dr. Kreifels-Hayman's brother because she was introduced to him that way – yet she elected to open the accounts with him, and to continue making the transfers at issue anyways.

The crux of the Complaint against WFCS then is essentially that between 2009 and 2013, Plaintiff allegedly told her WFCS financial advisor that she wanted to extend additional personal loans to his sister, and provided him with instructions to execute – which he followed.  Notably, Plaintiff does not allege that her WFCS financial advisor received any part of the proceeds from the loans, or that he recommended Plaintiff extend the loans in the first place. Nor does Plaintiff allege that she was unaware that transactions were made in her WFCS account to raise cash for the loans.  Indeed, Plaintiff concedes that she brought the loans to her WFCS

financial advisor's attention and instructed him to make the transfers.  In light of these allegations, Plaintiff is essentially asserting that WFCS should be held liable because it did not turn her away as a customer, or force her to open accounts with another financial advisor, and/or because WFCS did not refuse to follow her duly authorized instructions for the disposition of her assets elsewhere. The law clearly does not support such an absurd result. The law does not make WFCS a guarantor of Plaintiff's own decisions with her money outside of her brokerage accounts.  As such, these allegations cannot state a claim against WFCS upon which relief can be granted.

Even assuming *arguendo* that such a claim could be maintained, the factual allegations in the Complaint reflect that Plaintiff was aware of all the material facts that underlie her claim against WFCS over a decade ago.  Each of the causes of action asserted in the Complaint carry a four (4) year statute of limitations – and it is therefore apparent on the face of the Complaint that the limitations period has long run for all claims asserted against WFCS.

Lastly, the Complaint sounds in fraud, and it is therefore subject to a heightened pleading standard under Federal Rule of Civil Procedure 9. Nevertheless, the Complaint is remarkably deficient of any allegations detailing the alleged loans, purported fraud by Dr. Kreifels-Hayman, and more importantly, provides virtually no specific allegations against Plaintiff's WFCS financial advisor

relating to the multiple transactions Plaintiff now complains of.  Accordingly, the Complaint also fails to meet the particularity standard of Rule 9(b).

In sum, this Court should grant WFCS's motion to dismiss because the Complaint fails to state a claim upon which relief can be granted, and because all of the causes of action asserted are long barred by the statute of limitations.  Should the Court decline to grant the motion to dismiss on one of those two grounds, the Complaint should still be dismissed because it fails to meet the particularity standard of Rule 9(b).

## II.  <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6).* Federal Rule of Civil Procedure 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*;

*Franklin v. Media,* No. 8:10-cv-2935-T-33MAP, 2011 U.S. Dist. LEXIS 97875, at *7 n.2 (M.D. Fla. Aug. 31, 2011)("This allegation, however, is simply speculation and is not entitled to any deference, weight or presumption in context of the Court's consideration of a motion to dismiss.").

In ruling on a motion to dismiss, the Court must generally consider the factual allegations in the complaint as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa Cnty., Fla.,* 21 F.3d 1531, 1534 (11th Cir. 1994). Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).  However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

A defendant may raise a statute of limitations defense in a motion to dismiss for failure to state a claim "when the complaint shows on its face that the limitation period has run." *Foster v. Savannah Comm'n*, 140 F. App'x 905, 907 (11th Cir. 2005) (quoting *Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982)). As the Supreme Court has stated:

> "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a

claim."

*Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). "When

the time-bar is apparent from the face of the complaint, the plaintiff bears the burden

of pleading allegations sufficient to toll the statute of limitations." *Padilla v. Porsche*

*Cars. N. Am.*, Inc., 391 F. Supp. 3d 1108, 1112 (S.D. Fla. 2019); see *Patel v.*

*Diplomat*, 605 F. App'x 965, 966 (11th Cir. 2015).

## ARGUMENT

### A.   All Causes Of Action Asserted In The Complaint Are Clearly Time-Barred

The three causes of action asserted in the Complaint -- fraud, breach of

fiduciary duty, and violation of Florida's Adult Protective Services Act, § 415.1111

-- each carry a four year statute of limitations.  ("Florida's statute of limitations for

fraud is four years.[2] § 95.11(3)(j), Fla. Stat. (2017)." *Philip Morris USA Inc. v.*

*Principe*, 337 So. 3d 821, 826 (Fla. 3rd DCA 2021)); "Under the statute of

limitations, actions for … breach of fiduciary duty must be commenced within four

years of when the cause of action accrued. § 95.11(3)(a), (p), Fla. Stat. (2009)." *Kelly*

*v. Lodwick*, 82 So. 3d 855, 857 (Fla. 4th DCA 2011); *Joseph v. Bernstein*, No. 13-

---

[2] Florida also provides for a twelve year statute of repose that completely bars the claims for fraud in the Complaint based on transactions prior to June 2, 2010. *Joseph v. Bernstein*, No. 13-24355-CIV, 2014 U.S. Dist. LEXIS 199524, at *18 (S.D. Fla. Apr. 21, 2014) ("The statute of repose, however, completely bars actions for fraud that are not 'begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered.' Fla. Stat. §§ 95.031(2) (1993); 95.031(2)(a) (2013).").

24355-CIV, 2014 U.S. Dist. LEXIS 199524, at *16 (S.D. Fla. Apr. 21, 2014) (dismissing claim for violation of §415.1111 and finding that "a claim based on a violation of a state statute must be filed within four years of the accrual of the cause of action. *See* Fla. Stat. § 95.11(3)(f).")).

In Florida, the statute of limitations runs "from the time the cause of action accrues." § 95.031, Fla. Stat. (2015). "A cause of action accrues when the last element constituting the cause of action occurs." *Id.* § 95.031(1). In claims for breach of fiduciary duty, the last element constituting a cause of action is "damages flowing from the breach." *Reuss v. Orlando Health, Inc.*, 140 F. Supp. 3d 1299, 1307 (M.D. Fla. 2015) (citations omitted).[3] Courts have held similarly in claims for violation of § 415.1111. See *Joseph v. Bernstein*, No. 13-24355-CIV, 2014 U.S. Dist. LEXIS 199524, at *16 (S.D. Fla. Apr. 21, 2014) ("The purported violations of the [Adult Protective Services Act] occurred in November 1993, when Harold was exploited by Defendants in connection with the sale of a worthless life insurance policy. It was in November 1993 that any statutory violation would have occurred."). However, actions sounding in fraud do not accrue until "the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." *Id.* § 95.031(2)(b). Accordingly, fraud causes of action are barred

---

[3] "The so-called 'delayed discovery doctrine,' providing that the statute of limitations begins to run upon discovery of the last element of the cause of action, does not apply to claims for breach of fiduciary duty." *Id.*

four years after the plaintiff knew or should have known that the fraud occurred. *Simony v. Fifth Third Mortg*. Co., No. 2:14-cv-387-FtM-29DNF, 2014 U.S. Dist. LEXIS 150366, at *5 (M.D. Fla. Oct. 22, 2014).

In relevant part, the Complaint alleges that (i) Dr. Kreifels-Hayman "strongly encouraged that Ms. Henderson and R. Henderson inquire and employ Mr. Robert Kreifels with Wells Fargo to handle the investment of their monies in a brokerage account" (Complaint, at ¶6); (ii) Plaintiff opened her WFCS account in August 2009 (Complaint, at ¶9); (iii) "Dr. Hayman and her spouse requested that Ms. Henderson extend loans to them" (Complaint, at ¶13); (iv) "In order to extend the loans to Dr. Hayman, Ms. Henderson called Mr. Kreifels and advised him that his sister was asking her for a loan and the she needed monies to provide to provide to Ms. Kriefels' sister" (Complaint, at ¶14); (v) "From March 18, 2008 through April 30, 2013, Ms. Henderson made seven (7) unsecured loans to the Defendants in the aggregate principal amount of $337,500" (Complaint, at ¶15); and (vi) "Wells Fargo induced Ms. Henderson to sell certain stocks in her Brokerage Account so that Ms. Henderson could extend loans to Ms. Kriefels' sister." (Complaint, at ¶15).

The allegations in the Complaint clearly reflect that Plaintiff was aware of the material facts giving rise to her claim against WFCS concurrently with the making of the various loans to Dr. Kreifels-Hayman between 2009 and 2013. Specifically, Plaintiff concedes that (i) her relationship with Dr. Kreifels-Hayman began prior to her becoming a WFCS customer; (ii) she knew prior to her decision to open a WFCS

brokerage account, that her prospective WFCS financial advisor was Dr. Kreifels-Hayman's brother; (iii) Plaintiff brought the loans to her financial advisor's attention, not the other way around; (iv) Plaintiff instructed her financial advisor to raise cash in her WFCS accounts for the purpose of sending the transfers; (v) transactions were made in her WFCS account, with her knowledge, in furtherance of her instructions; and (vi) ultimately, she instructed her WFCS financial advisor to make the transfers.  As such, even using the last possible transaction date (2013) as the date of accrual, all of the causes of action must have been filed by 2017.  This Complaint was filed in June 2022 – nine years after the last transfer, and five years after the latest expiration date  – and is therefore long barred.

The Complaint also makes various vague and conclusory allegations in a futile effort to account for the inexplicable delay.  For example, Plaintiff alleges that "at no point did Wells Fargo and/or Mr. Kreifels advise Ms. Henderson regarding the conflict of interest between Wells Fargo and Ms. Henderson" or that "at no point did Wells Fargo and/or Mr. Kreifels advise Ms. Henderson regarding their fiduciary duties to Ms. Henderson."  However, these are conclusory allegations and are not entitled to deference given the allegations of fact, which clearly contradict them. See *Brown v. Oceania Cruises, Inc.*, No. 17-22645-CIV-ALTONAGA/Goodman, 2017 U.S. Dist. LEXIS 192626, at *11 n.5 (S.D. Fla. Nov. 20, 2017) ("Plaintiff alleges she sustained the injury, 'through no fault of her own,' and 'said accident and injuries sustained by Plaintiff were caused solely and wholly by reason of the fault and/or

negligence of Defendant and/or its agents, servants, and/or employees.' Such conclusory allegations do not receive the deference given to allegations of fact.").

Plaintiff also alleges that "Ms. Henderson did not become aware of the mishandling of the Brokerage account or the existing conflict of interest until the resolution of the dispute concerning Dr. Hayman's bankruptcy proceedings and the Loan." (Complaint, at ¶18).  While this allegation also suffers from the infirmity of being vague and conclusory, it is also notable that Plaintiff does not specify when this bankruptcy proceeding took place.  A review of the bankruptcy docket reflects that the Voluntary Petition was filed in <u>June 2015</u>. *See generally In Re Orion Hayman and Kreifels-Hayman,* Case No. 15-30605-JCO, Bankr. N.D. Fla. 2015.; Dkt. No. 1.  <u>Importantly, Plaintiff even made an appearance in that proceeding in May 2018</u>. *Id.*; Dkt. No. 158.  The Court may take judicial notice of these docket entries for purpose of the motion to dismiss without converting the motion into a motion for summary judgment. *Cherry v. Ventures Tr. 2013-I-NH by MCM Capital Partners LLC*, No. 15-24133-CIV, 2016 U.S. Dist. LEXIS 195252, at *4 (S.D. Fla. Feb. 26, 2016); *see also Jacobs v. Comerford*, No. 3:13cv52/RV/EMT, 2013 U.S. Dist. LEXIS 167341, at *11-13 n.8 (N.D. Fla. Oct. 30, 2013).  Again, the Complaint here was filed in June 2022 – more than four years after Plaintiff specifically became involved and represented by counsel in Dr. Kreifels-Hayman and her spouse's

bankruptcy proceeding.[4]

While it is already clear from the allegations in the Complaint that Plaintiff knew or should have known about the facts giving rise to the instant claim concurrently with the making of the various loans, there can be no dispute that Plaintiff had actual knowledge by May 2018. Nevertheless, Plaintiff waited more than four years from that date to file this claim.  Accordingly, it is apparent on the face of the Complaint that all of the causes of action asserted are time-barred, and the Complaint must be dismissed.  Moreover, in light of Plaintiff's appearance in the bankruptcy proceeding over four years ago, there is no set of allegations that Plaintiff can make to overcome this bar.  As such, the Complaint should be dismissed with prejudice.

**B.      The Complaint Fails to State a Claim Against WFCS**

As discussed above, the few well-pled allegations in the Complaint concede that (i) Plaintiff had a relationship with Dr. Kreifels-Hayman, and began making loans to her, prior to ever becoming a customer of WFCS; (ii) prior to ever electing to open an account with WFCS, Plaintiff knew that the prospective WFCS financial advisor was Dr. Kreifels-Hayman's brother – and Plaintiff decided to open the

---

[4] It should also be noted that Plaintiff filed a motion for relief from the automatic stay on January 15, 2019 (Dkt. No. 15), which was granted in part (Dkt. No. 170). Plaintiff then filed an action against Dr. Kreifels-Hayman and her spouse in the circuit court in and for Okaloosa County, Florida, Case No. 2019-CA-003016 on August 19, 2019.

account anyways; (iii) Plaintiff was the one who brought the loans to her WFCS financial advisor's attention, he did not recommend them to Plaintiff; (iv) Plaintiff instructed the WFCS financial advisor to raise cash in the account in order to make the loan – and he followed her instructions; and (v) Plaintiff instructed her WFCS financial advisor to make the transfers – and he again followed her instructions.

The elements for each of the claims asserted in the Complaint are stated below.  However, in sum, Plaintiff's claim is that WFCS acted wrongfully because it did not turn her away as a customer, or force her to open accounts with another financial advisor, and/or because it did not refuse to follow her duly authorized instructions for the disposition of her assets outside of WFCS. The simple fact is that no cognizable legal theory exists under which WFCS bears responsibility for Dr. Kreifels-Hayman's alleged failure to repay Plaintiff on the loans made away from WFCS.

### *Count I – Fraud*

The elements of fraud are "(1) false statement of material fact or suppression of truth by the defendant; (2) the defendant knew or should have known the statement was false, or made the statement without knowledge as to truth or falsity; (3) the defendant intended the false statement or omission induce the plaintiff's reliance; and (4) the plaintiff justifiably relied to his detriment." *Grills v. Philip Morris USA, Inc.*, 645 F. Supp. 2d 1107, 1122-23 (M.D. Fla. 2009).

The Complaint fails to identify a single well-pled allegation of a false statement or omission by WFCS or Plaintiff's WFCS financial advisor. Instead, the Complaint largely focuses on Plaintiff's dealings with Dr. Kreifels-Hayman, which cannot simply be imputed to WFCS or to Plaintiff's WFCS financial advisor. Dr. Kreifels-Hayman is not alleged to be an employee or agent of WFCS – nor was she. Plaintiff's failure to provide specific allegations of false statements or omissions made by WFCS or her WFCS financial advisor is fatal to her fraud claim. *See W. Coast Life Ins. Co. v. Life Brokerage Partners. LLC*, No. 08-80897-Civ-Ryskamp/Vitunac, 2009 U.S. Dist. LEXIS 81650, at *22-23 (S.D. Fla. Aug. 11, 2009) ("Plaintiff portrays [a fraudulent] scheme and then summarily and vaguely alleges that Defendant PVA made, or directed others to make, false statements in the insurance applications. Such conclusory allegation, without more, fails to alert Defendant PVA to the precise misconduct with which it is charged[.]").

Beyond the foregoing, the Complaint more plainly fails to state claim a for fraud against WFCS because it concedes that Plaintiff had actual knowledge of the vague and undefined "conflict of interest" she now complains of (*i.e.* the familial relationship between Dr. Kreifels-Hayman and her WFCS financial advisor), prior to opening her WFCS account, and prior to making the transfers at issue. The Complaint also concedes that the transactions made in her WFCS account in furtherance of the loans, were made at her direction. As such, there is no specific allegation of misconduct at all by either WFCS or the financial advisor.

Case law is clear that these more specific allegations control over Plaintiff's vague and conclusory allegations relating to the existence of a "conflict of interest" or that the transactions were not in her "best interest." *Mims Invs., LLC v. Mosaic Fertilizer*, LLC, No. 8:11-CV-1093-T-17TBM, 2012 U.S. Dist. LEXIS 139125, at *11 (M.D. Fla. Sep. 27, 2012) ("The Court's duty to accept all well-pleaded factual allegations as true does not require the Court to ignore specific factual details of the pleading in favor of general or conclusory allegations.").

Accordingly, Count I should be dismissed for failure to state a claim for which relief can be granted.

### *Count II – Breach of Fiduciary Duty*

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Taubenfeld v. Lasko*, 324 So. 3d 529, 537-38 (Fla. 4th DCA 2021) (*quoting Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)).

A financial advisor owes limited duties to his/her customer in a non-discretionary account. "These duties include:

(1) the duty to recommend investments only after studying it sufficiently to become informed as to its nature, price, and financial prognosis; (2) the duty to perform the customer's orders promptly in a manner best suited to serve the customer's interests; (3) the duty to inform the customer of the risks involved in purchasing or selling a particular security; (4) the duty to refrain from self-dealing; (5) the duty not to misrepresent any material fact to the transaction; and (6) the duty to transact business only after receiving approval from the customer."

*Sec. Inv'r Prot. Corp. v. Old Naples Sec., Inc. (In re Old Naples Sec., Inc.)*, 343 B.R. 310, 321 (Bankr. M.D. Fla. 2006) (*quoting Gochnauer*, 810 F.2d at 1049).

The Complaint fails to set forth any well-pled allegation against WFCS or Plaintiff's financial advisor that would state claim for breach of any of these duties. Specifically, the Complaint makes clear that (i) Plaintiff had a relationship with Dr. Kreifels-Hayman, and began extending loans to her, prior to opening a WFCS account; (ii) Plaintiff knew that they were brother-sister before ever opening her WFCS account – Plaintiff chose to do so anyways; and (iii) "[Plaintiff] called [her financial advisor] and advised him that his sister was asking her for a loan and that she needed monies to provide to [his sister]" – in other words, that her financial advisor is not alleged to have played any role in the decision to extend the loan. (*See Complaint*, at ¶14). The Complaint thus makes clear that Plaintiff's financial advisor simply followed Plaintiff's instructions, not Dr. Kreifels-Hayman's or his own discretion, in raising the cash in the account to effect the transfer Plaintiff requested that he make.

Any financial advisor would have had to follow Plaintiff's duly authorized instructions for the disposition of her own money to Dr. Kreifels-Hayman – the fact that it happened to be Dr. Kreifels-Hayman's brother does not change that fact, nor does it somehow create a cause of action. Plaintiff's Complaint essentially paints a Hobson's choice – face liability for following Plaintiff's duly authorized instructions, or face liability for refusing to follow Plaintiff's duly authorized

instructions – such is not the role of the law in regards to a financial institution's duties to its customer.

Accordingly, Count II should be dismissed for failure to state a claim for which relief can be granted.

### Count III - Violation of Florida's Adult Protective Services Act, §415.1111

Florida's Adult Protective Services Act ("FAPSA"), § 415.1111, Fla. Stat. provides that "A vulnerable adult who has been abused, neglected, or exploited as specified in this chapter has a cause of action against any perpetrator [ ] for such abuse, neglect, or exploitation."

As a preliminary matter, Chapter 415 does not apply to this case, as WFCS is not Plaintiff's caretaker or relative.  If the defendant is not a caregiver, no cause of action exists against it under Chapter 415. *Tenet S. Fla. Health Sys. V. Jackson,* 991 So. 2d 396, 398-99 (3d DCA 2008) ("Chapter 415 was enacted to protect vulnerable adults from neglect by caregivers …the caregiver must fail to provide the necessities which a prudent person would consider essential for the well-being of a vulnerable adult or act in a careless manner resulting in injury or death."). This statute does not apply to any of the facts or circumstances here.  See, e.g. *Milazzo v. First Liberty Ins. Corp.*, No. 2:21-cv-550-JLB-MRM, 2021 U.S. Dist. LEXIS 235718, at *12 (M.D. Fla. Dec. 9, 2021) ("Indeed, it is not clear that the definition of abuse, neglect, or exploitation even contemplates an insurance company's sale of an insurance policy." (*citing Joseph v. Bernstein*, 612 F. App'x 551, 557 n.6 (11th Cir. 2015)); *see*

*also Krinsk v. SunTrust Banks, Inc.*, No. 8:09-CV-909-T-27EAJ, 2010 U.S. Dist. LEXIS 147992, at *8-9 (M.D. Fla. Jan. 8, 2010) ("Indeed, the examples of fiduciary relationships listed in the statute, while not exclusive, are far removed from the lender-borrower relationship alleged in the complaint. See Fla. Stat. § 415.102(11) ('fiduciary relationship' within the meaning of the Adult Protective Services Act includes 'court-appointed or voluntary guardians, trustees, attorneys, or conservators of a vulnerable adult's assets or property.").

Moreover, the Complaint does not allege any actions by WFCS or its financial advisor that  could possibly constitute "abuse" under the statute, which is defined as a "willful act or threatened act by a relative, caregiver, or household member which causes or is likely to cause significant impairment to a vulnerable adult's physical, mental or emotional health." Fla. Stat. § 415.102(1).

Similarly, the Complaint does not allege any conduct that would constitute "exploitation" as defined under the statute. "Exploitation" is defined in relevant part as "[b]reaches of fiduciary relationships, such as the misuse of a power of attorney or the abuse of guardianship duties, resulting in the unauthorized appropriation, sale, or transfer of property." Fla. Stat. § 415.102(8)(b).  As discussed above, the Complaint concedes that Plaintiff's accounts were non-discretionary, and that Plaintiff provided the instructions for WFCS to carry out with regard to the disposition of her money. Moreover, neither WFCS nor the financial advisor are alleged to have been involved in Plaintiff's decision to make the loan to Dr. Kreifels-

Hayman. *See Milazzo*, 2021 U.S. Dist. LEXIS 235718, at *12 (M.D. Fla. Dec. 9, 2021) ("Even more, the claim fails to support a showing of abuse, neglect, or exploitation with non-conclusory factual allegations. See Fla. Stat. § 415.102(1), (8), (16).").

Chapter 415 was intended to prevent abuse of a disabled adult by ***relatives and caregivers***, such as in the case of nursing home abuse, and does not to apply to claims by customers against their brokerage firms. This claim is plainly frivolous, and WFCS is entitled to its reasonable attorney's fees and costs as a result. Under Section 415.1111, "[a] party who prevails in any such action may be entitled to recover reasonable attorney's fees, costs of the action, and damages." Thus, WFCS respectfully requests that in addition to dismissal of this Count, it be deemed the prevailing party on Plaintiff's Chapter 415 claim, and specifically reserves its right to pursue attorneys' fees and costs.

## C. *The Complaint Should be Dismissed for Failure to Plead with Sufficient Particularly Under Rule 9(b)*

Pursuant to clearly defined Eleventh Circuit precedent, the Complaint sounds in fraud, and it is therefore subject to the heightened pleading standard of Rule 9(b). *Muy v. IBM*, No. 4:19cv14-MW/CAS, 2019 U.S. Dist. LEXIS 228904, at *3 (N.D. Fla. Nov. 25, 2019) ("Rule 9(b)'s heightened pleading requirement also applies, as Plaintiff's complaint 'sounds in fraud.'"). As this Court has previously explained,

A plaintiff satisfies this standard if the complaint sets forth '(1) precisely what statements were made in what documents or oral

> representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Culver-Taylor v. Foster*, No. 5:17-CV-289-LC/MJF, 2019 U.S. Dist. LEXIS 55682, at *21-22 (N.D. Fla. Feb. 22, 2019).

As discussed above, the Complaint only provides vague and general allegations that Plaintiff was the victim of a fraud by Dr. Kreifels-Hayman between 2008 and 2013, and that she made seven transfers to Dr. Kreifels-Hayman from an account outside WFCS throughout that period.  However, as it relates to WFCS and her financial advisor, Plaintiff alleges virtually no specific facts.  For example, Plaintiff does not make any specific allegations surrounding any conversations she had with her financial advisor about the alleged loans, or about the alleged transactions made in her brokerage account to raise cash in furtherance of the transfers.  *See Culver-Taylor v. Foster*, No. 5:17-CV-289-LC/MJF, 2019 U.S. Dist. LEXIS 55682, at *21 (N.D. Fla. Feb. 22, 2019) ("The particularity requirement of Rule 9(b) is satisfied if the complaint alleges facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'").

As such, it is clear that the Complaint absolutely fails to meet the particularly requirement of Rule 9(b), and in doing so fails to give WFCS the requisite notice in order to defend itself from these specious claims. *Maison v. Ford Motor Co.*, 18 Fla.

CASE NO:  3:22-cv-09586-MCR-HTC

L. Weekly Fed. D 1071 (U.S. N.D. Fla. 2005) ("Generally speaking, the particularity requirement referenced in Rule 9(b) is designed to give a defendant notice as to the precise nature of the allegations of fraud being brought against him and, by insisting on precision, is also intended to insulate defendants from claims that are wholly without merit.").  Accordingly, Count III of the Complaint should be dismissed.

## CONCLUSION

For the foregoing reasons and authorities cited, Wells Fargo Clearing Services LLC, respectfully asks this Honorable Court to enter an order dismissing the Complaint in its entirety with prejudice.

Dated: August 11, 2022                    Respectfully submitted,

By: *s/ Leonel Peraza*
      Sara Soto, Esq.
      Florida Bar No. 265152
      Leonel Peraza, Jr., Esq.
      Florida Bar No. 0099089
      Bressler, Amery & Ross, P.C.
      200 S. Biscayne Blvd., Suite 2401
      Miami, Florida 33131
      Telephone:  (305) 501-5485
      Facsimile:   (305) 501-5499
      Primary E-mail: ssoto@bressler.com
      Primary E-mail: lperaza@bressler.com
      Secondary E-mail: ktoulon@bressler.com
      Secondary E-mail:mgomez@bressler.com
      *Counsel for Defendant Wells Fargo*
      *Clearing Services LLC.*

## LOCAL RULE 7.1(F) CERTIFICATION OF WORD LIMIT

Pursuant to N.D. Fla. Local Rule 7.1(F), I certify that this memorandum of law is in compliance with the Court's word limit. According to the word processing program used to prepare this memorandum, the memorandum contains 5,374 words.

By: *s/          Leonel Peraza*
Leonel Peraza

## REQUEST FOR HEARING

In accordance with N.D. Fla. L.R. 7.1(K), WFCS requests a hearing on this Motion because the complexity of the factual and legal issues raised, are such that oral argument would be beneficial to the Court. WFCS estimates that one hour will be sufficient to address the issues raised.

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner.

By: *s/          Leonel Peraza*
Leonel Peraza